UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DEBRA HOLBROOK ) | |
| ) | |
| V. ) | NO. 2:06-CV-159 |
| ) | |
| ASSOCIATED ORAL and ) | |
| MAXILLOFACIAL SURGEONS ) | |

## **MEMORANDUM**

Claiming that she was fired from her employment with defendant because she became pregnant, plaintiff filed suit against her former employer under Title VII of the Civil Rights Act of 1964[1] and the Family Medical Leave Act.[2]

Defendant has filed a motion for summary judgment. (Doc. 8). Only if there is no genuine issue as to any material fact, and only if the moving party is entitled to a judgment as a matter of law based on those undisputed facts, is a party entitled to summary judgment. F.R.Civ.P. 56(c). The party against whom a motion for summary judgment is filed must be indulged with all possible favorable inferences from the facts, *Plott v. Gen. Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995). It is incumbent upon the party opposing a motion for summary judgment to demonstrate that there exists a "genuine issue as to any material fact." *Celotex*

---

[1]42 U.S.C. § 2000e-2(a).

[2]29 U.S.C. § 2601, *et seq.*

*Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A mere scintilla of evidence will not defeat a motion for summary judgment; there must be evidence on which the jury could *reasonably* find for the party against whom a motion for summary judgment is pending. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Defendant has filed a "Statement of Undisputed Facts,"[3] and the plaintiff similarly has filed her version of undisputed facts.[4] From those two documents it appears there are relatively few disputes regarding facts, but nevertheless there are some disputes. Obviously this court is required to adopt plaintiff's version with regard to any disputed facts. With that principle in mind, for summary judgment purposes the facts are as follows:

As defendant's name indicates, it is a group or firm of oral surgeons. It never has had 50 or more employees.

Plaintiff was hired by defendant on September 12, 2004, as a medical receptionist. Her duties included checking patients in and out, answering the telephone, opening the office and books each morning, closing out at the end of the day, and making calls to schedule surgeries. Defendant provided training to plaintiff with respect to her duties, and she never complained about the adequacy of that training.

When she was hired in September 2004, one of the oral surgeons, Dr. Collins, asked her "pointed questions" regarding her marital status, and the number and ages of her children.

Defendant provided to plaintiff and the other employees an employee handbook which

---

[3]Doc. 9.

[4]Doc. 13.

contained, among other things, a graduated disciplinary system consisting of an initial verbal warning, then a written warning with counseling, then a second written warning with more counseling, and then dismissal. The handbook, however, was not a contract between the parties; plaintiff was an employee at will.

In December 2004, plaintiff began fertility treatments, and she told various people in the office, including some of her employers, that she was being treated by a fertility specialist. Plaintiff went to the fertility clinic on her personal time, except for a "couple" of times that were approved by her employer.

Upon learning that plaintiff was attempting to become pregnant, Jan Hughes, dental assistant to Dr. Eilers, told plaintiff that she "should be very careful about getting pregnant because a girl, Jennifer Speller, in the Kingsport office had been let go based on pregnancy." Plaintiff also was told by another employee, Donna Arnold, that an unnamed employee had been let go because she had become pregnant.

Plaintiff became pregnant in March 2005. Upon learning of the pregnancy, Dr. Bacon asked plaintiff who would care for the child.

Claiming that there were problems with plaintiff's job performance in early April 2005, Dr. Bacon instructed Donna Fuller and Tina Musick to meet with plaintiff and discuss those problems with her. That meeting took place on April 6, 2005, and various alleged deficiencies in plaintiff's work were discussed; plaintiff's pregnancy was *not* discussed.

Prior to her meeting with Fuller and Musick, plaintiff felt secure in her job; she had never received any warnings, verbal or written, and she recently had been told by Dr. Hamlin

that she was doing a good job.

Plaintiff was fired on April 8, 2005. Shortly thereafter she returned to the office to talk with Dr. Eilers, who told her that she had been a good employee and that her termination was wrongful and unfair.

Plaintiff asserts that another female employee was fired in January 2005 because she was pregnant. According to plaintiff, the source of her information that forms the basis of this allegation is defendant's answers to interrogatories and requests for production of documents.[5] However, the answer to the specific interrogatory question[6] states that the employee, Jennifer Speller, was terminated because of excessive absenteeism. It also should be noted that the answers to the interrogatories reveal that the defendant has had fourteen other employees who became pregnant, none of whom were terminated. Ten of those employees voluntarily left defendant's employment for various reasons, and four are still employed by defendant.

**FAMILY MEDICAL LEAVE ACT ("FMLA") CLAIM**

For a person or entity to qualify as an "employer" under the FMLA, that person or entity must have at least fifty employees. 29 U.S.C. § 2611(4). Defendant has filed the affidavits of two of its surgeons that it never has had fifty or more employees. Plaintiff has presented no evidence to the contrary. Therefore, the FMLA has no application to this suit.

**TITLE VII CLAIM**

---

[5]Plaintiff's affidavit, Doc. 13, ¶ 17.

[6]Question No. 22.

4

Since plaintiff has no direct evidence of discrimination, she must prove her case by circumstantial evidence, as a result of which the *McDonnell Douglas-Burdine* analytical framework comes into play. Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981).

> Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

*Burdine*, 450 U.S. at 254. (footnote omitted).

With respect to a claim of discrimination based on pregnancy, to make out a *prima facie* case, the plaintiff must show that (1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and that adverse employment decision. *Prebilich-Holland v. Gaylord Entertainment Company, d/b/a*, 297 F.3d 438, 442 (6th Cir. 2002).

If the plaintiff makes out the *prima facie* case of discrimination, the burden shifts to the employer to produce legitimate, non-discriminatory reasons for the challenged employment action. *McDonnell-Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254. If the defendant comes forward with legitimate, non-discriminatory reasons for its actions toward the plaintiff, the presumption of discrimination created by the *McDonnell-Douglas*

5

framework "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 455 and n. 10. Once the defendant has come forward with a non-discriminatory reason for its actions, and the presumption created by the *prima facie* case has dropped from the case, the plaintiff then may attempt to prove that the defendant's proffered explanations are not true:

> [The plaintiff] must now have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision . . . . [The plaintiff] may succeed in this either directly by persuading the court that the discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine*, 450 U.S. at 256.

In other words, the plaintiff may attempt to prove to the fact finder that the reasons given by the employer were merely pretextual, and not the real reasons. The Supreme Court held in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), that the jury's disbelief of the employer's proffered reasons for its job action, coupled with the elements of the *prima facie* factors, would *permit* the jury to infer that the employer intentionally discriminated against the plaintiff.

If a plaintiff successfully makes out a *prima facie* case of discrimination, then summary judgment for the defendant employer is precluded. *Equal Employment Opportunity Commission v. Willis,* 104 F.3d 858, 861 (6th Cir. 1997).

In its motion for summary judgment, defendant asserts that the plaintiff has not established a *prima facie* case and therefore defendant is entitled to a judgment as a matter

of law. Again, to establish a *prima facie* case, plaintiff must prove that she was pregnant; that she was qualified for her job; that she was subjected to an adverse employment decision; and there is a nexus between her pregnancy and her termination in April 2005.

It is undisputed that she was pregnant.

Although defendant vigorously insists that plaintiff was not qualified for her job, that issue cannot be resolved at the summary judgment stage. Defendant of course has presented affidavits and deposition testimony that plaintiff's job performance was far less than adequate and it was only for that reason that she was fired. On the other hand, plaintiff has offered her own affidavit that her work performance was more than satisfactory and she had never been given any warnings as described in the employee handbook. To be sure, the employee handbook is not a contract, and the defendant was free to ignore its own disciplinary procedures if it chose to do so. But it is possible that the jury, after hearing the evidence, could conclude that the lack of any warnings or other disciplinary procedures directed toward the plaintiff suggest that her job performance was not the reason for her termination. On the other hand, the jury could conclude that the plaintiff was a thoroughly unsatisfactory employee. The point bears repeating: whether plaintiff was qualified is a disputed issue of fact requiring resolution by the jury.

There is no dispute that plaintiff was subjected to an adverse employment decision; she was fired.

Thus, plaintiff has satisfied the first three elements of the *prima facie* analysis. It is the last factor - whether there was a nexus between her pregnancy and her termination - that

must now be decided. Plaintiff of course has alleged in her complaint that she was terminated on the basis of her pregnancy. The defendant has filed affidavits and deposition testimony which indicate that plaintiff was fired for poor job performance. This court is now required to determine if plaintiff has come forward with sufficient circumstantial evidence, as required by *Celotex, supra*, to create a genuine issue of fact regarding a nexus between her pregnancy and her firing.

There is nothing in plaintiff's affidavit filed in opposition to the motion for summary judgment that creates legitimate issues of material fact. The evidence necessary to create an issue of fact sufficient to defeat a motion for summary judgment must be admissible in evidence. F.R.Civ.P. 56(e). Conclusory allegations and inadmissible hearsay statements that would be inadmissible during the trial of the case cannot be relied upon to defeat a motion for summary judgment. Dr. Collins' "pointed personal questions" regarding plaintiff's marital status and the ages of her children have no probative value. The statement attributed to Jan Hughes, *viz,* - that plaintiff should be careful about getting pregnant because Jennifer Speller was terminated on account of her pregnancy - is rank hearsay. In this same vein, the statement which plaintiff attributes to Donna Arnold that another unnamed employee had been fired on account of her pregnancy is inadmissible hearsay. Defendant's assertion that another female employee was fired in 2005 is based on defendant's discovery responses which do not support the assertion. Dr. Bacon's inquiry regarding who would care for plaintiff's baby after it was born has little or no probative value regarding discriminatory animus. In short, although plaintiff's affidavit creates an issue of fact regarding her job

performance, it provides no evidence that remotely suggests that her termination was motivated by her pregnancy. Nevertheless, there is a nexus between her pregnancy and termination: there is no dispute that she became pregnant in March 2005 and that she was discharged one month later:

> [Plaintiff] met the nexus requirement in part by establishing temporal proximity between [her employer's] learning of her pregnancy and her termination. Temporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context.

*Asmo v. Keane Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

With the *prima facie* case thusly established, it is incumbent upon the defendant to come forward with evidence that the reason for plaintiff's discharge was something other than her pregnancy. The *McDonnell-Douglas/Burdine* presumption must now drop from the case, and the inquiry now proceeds to "a new level of specificity." *United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 714 (1983). This the defendant has done, thereby shifting the burden to the plaintiff to present evidence that the defendant's proffered reason for her discharge was pretextual. In that regard, the court must look again to plaintiff's affidavit; more specifically, to those portions of plaintiff's affidavit which address the question of her termination in relation to her pregnancy. Her affidavit in that regard has already been discussed earlier in this opinion with regard to her efforts to make out a *prima facie* case, and there is no need to discuss it anew. Suffice it to say, her affidavit sets forth only conclusory allegations and inadmissible hearsay statements. She has presented no competent evidence that would create a genuine issue of material fact that will defeat defendant's

9

motion for summary judgment.

*Reeves v. Sanderson Plumbing, supra*, cannot be read as absolutely precluding the granting of summary judgment if the plaintiff is able to make out a *prima facie* case, any more than it could be read as precluding the granting of a motion for judgment as a matter of law under F.R.Civ.P. 50. In *Reeves*, the Supreme Court held that the *prima facie* case, coupled with *sufficient* evidence for the jury to disbelieve the defendant's non-discriminatory explanation for the plaintiff's termination, will permit the jury to infer that those proffered reasons were not the truth and that the real reason was the unlawful discrimination as set out in the *prima facie* case. When all is said and done, the *Reeves* holding is rather simple: If the plaintiff has some competent proof that the defendant lied with respect to its avowed reasons for terminating the plaintiff, then the jury is permitted to reject those reasons on that account alone. Here, however, the plaintiff has come forward with no such evidence. If the jury chose to disbelieve the defendant's explanations for plaintiff's termination, it would be on some basis other than the evidence, i.e., capriciousness.

Defendant's motion for summary judgment shall be granted.

Judgement shall be entered dismissing this case.

SO ORDERED:

                                                      s/ Dennis H. Inman  
                                              United States Magistrate Judge